Clark *vs.* The State of Georgia.

JOHN C. CLARK, plaintiff in error, *vs.* THE STATE OF GEOR-
GIA, defendant in error.

It is incumbent on the State, in criminal cases, to prove every accusa-
tion it makes ; the testimony must convince the understanding beyond
a reasonable doubt.

Arson.   Motion for new trial.   Decided by Judge IRWIN.
Fannin Superior Court.   October Term, 1867.

John C. Clark, Jno. Cain, Pinckney Fortner, Martin
Burns, Wm. Evett, Elias Marlow and Jesse Blackwell were
indicted for burning the dwelling house of Joshua J. New-
berry on the 28th of November, 1864.   The indictment
charged that the house was in the country, and that no one
was in it at the time of the burning.   It did not state whether
the burning was in the day or night.

Clark alone was tried.   The burning, etc., was proved.
As to who did it, and under what circumstances, the testi-
mony was as follows :

Mrs. MAHALA NEWBERRY said they put fire into her bed,
they called each other's names, calling one Brown, whom she
since learned was Blackwell.   She did not know that Clark
was there at the burning, which was between daylight and
sunrise, but he was there the night before.   Pinckney Fort-
ner was one of the party who came the night before; they
went off towards Martha Davis' house, and witness saw the
light rise from that house.

JAMES PAYNE testified that, on the day of the burning, the
crowd passed his house going from the direction of New-
berry's; Clark was with them; they had a sheet with some
wool and leather tied up in it; they were going towards
Clark's; they had something in their bosoms and pockets,
which witness thought was twisted yarn, but witness did not
see Clark with anything.

JAMES A. NEWBERRY testified that he met Clark and eight
or nine others going towards his father's; Clark asked him
where were his father and brother, and witness said they were
cradling.   Witness was scared.   They told witness to go to

Lovingood's, which was in sight, and stay till they came. Witness went a little way, and then ran about three miles, and went down to the settlement. When witness met this party it was on the evening before the fire, about one mile from his father's, and when the sun was about half an hour high. Witness knew none of them except Clark; he led the party and did the talking.

Witness' father had two raw-hides, some wool, and some tanned leather in a trough at home. Clark had an army gun and a pistol; he made no threats, but witness was scared, because they had been knocking men in the head. The party wore gray coats.

MARTHA NEWBERRY testified that a broad-cloth coat, some spun wool, knives and forks, three raw-hides, some wool and some tanned leather were taken off by the party from her father's.

JANE NEWBERRY, daughter-in-law of Joshua Newberry, testified that Clark and Cain, with ten others, were drinking on Saturday; they came to witness' house, and ordered her to get away by Sunday. Clark and Cain were very drunk, and said they would burn Newberry's house and others. Upon cross-examination she said she was unfriendly with Clark, because he caused her house to be burned, that the party said they were Capt. Carder's men; they looked like soldiers. Blackwell seemed sorry that they treated witness so, and said they were drinking; Pinckney Fortner said he was at the fire, and got some of the wool, and paid witness for it.

MARTHA PAYNE testified that Clark, Burns, and the others of the party passed her house, with wool and spun thread, rawhides and leather, but Clark had none. Her house was about five miles from Newberry's.

On behalf of the defendant MARTIN S. BURNS testified that he and Clark were in the 11th Georgia Cavalry, attached to Harrison's brigade, in Capt. Kelly's company, and stationed near Jonesboro, Georgia. Burns heard that his house was burned, and Lieutenant Alison gave him and Clark permission to go home for twenty days. After two weeks Capt. Kelly came to Dahlonega, Burns and Clark were transferred

for two weeks under Capt. Carder.  Lieut. Sibley was Third Lieutenant under Capt. Carder.  Carder commanded that post under Gen. Reynolds.  Carder had to go to Athens, and told Sibley to forage about the mountain till his return. The squad which Sibley commanded sometimes had twelve or fifteen, and sometimes thirty persons.  The squad consisting of eleven men, were at Lovingood's.  Sibley ordered all, except Burns and Clark, to go and break Newberry up. John Cain, Pinckney Fortner, William Evett, Jesse Blackwell, Samuel Tillory, John Gun, and John Mullins received these orders about day ; they were gone about an hour and a half, came back and said they had burnt Newberry's house. Sibley said it was all right; he was recognized and obeyed as an officer.  Witness said that he saw Fortner have some wool-rolls and some raw-hides, but did not see Clark have any, and did not hear Clark make the threats testified to by Jane Newberry.

BENJAMIN C. CHASTAIN testified that he knew Carder, that he was recognized as a Captain in the Confederate service, and Sibley as a Lieutenant, under Gen. Reynolds, who commanded North-East Georgia.  Capt. James Kelly testified that Carder was a commissioned Captain, and that Burns and Clark were put under him by orders emanating from Gen. Reynolds.

The State reintroduced a witness, who testified that Burns was asked by Mrs. Newberry why he burnt her house, and replied that Sibley was away that day, that they volunteered, and Sibley said he would not go.

What was the charge of the Court does not appear.  The Jury found Clark guilty in the second degree.

His Attorney moved for a new trial, upon the grounds that the verdict was contrary to law, the charge and the evidence, because of newly discovered evidence, and because the Court erred in overruling the exception to the indictment that it did not charge whether the burning was in the daytime or at night.

When, if ever, this exception was taken, does not appear. Nor does the record disclose what new evidence had been

14

discovered. The Court refused a new trial, and for this the case comes up.

WEIR BOYD, for plaintiff in error.

N. B. KNIGHT, Solicitor General, for the State.

HARRIS, J.

If Clarke, the defendant, was really guilty of burning the dwelling house of Newberry in the country, the testimony when taken together and carefully analyzed neither positively nor presumptively establishes the fact beyond a reasonable doubt. It is incumbent on the State to prove every accusation she makes; the testimony must convince the understanding beyond a reasonable doubt. This she failed to do in this case.

There is not only no positive testimony of Clark's burning the house or participation in it—but the positive testimony of Burns that Clark and himself were, by military orders, kept behind, and a squad of Confederate soldiers whose names are given by witness, were ordered forward by Lieutenant Sibley in command, to burn the house for which act defendant was indicted and convicted.

A very important question could well have been sprung upon the Court in this case, which should have been decisive of it in my opinion, whether Clark burned the house or not.

The act was unquestionably one of war, against a supposed enemy; it was ordered by an officer in command, and the private could but obey. What else did he dare do? He cannot stop to question the authority of his superior! Obedience or death are the alternatives in military government in such cases. Military government is but another name for an absolute despotism; the subordinate almost always acts under coercion; his acts are the acts of others for which in the clear light of common sense, he cannot be held answerable in the municipal tribunals of the State.

If it be true that he burned the house of Newberry, but by the command of his superior officer in the usual course of prosecuting war, he should have been acquitted, not convicted.    Let a new trial be had.